## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JASON P. REED,**

      **Plaintiff,**

**vs.**                                **Case No. 4:18cv472-WS-CAS**

**CENTURION HEALTH OF**
**FLORIDA, et al.,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se and in forma pauperis, filed an amended

civil rights complaint, ECF No. 8, pursuant to 42 U.S.C. § 1983.  Service

was directed, ECF No. 16, and Defendant Bearden filed a motion to

dismiss the amended complaint.  ECF No. 34.  Plaintiff was advised of his

obligation to respond to that motion, ECF No. 35, and his response was

timely filed.  ECF No. 38.

Additionally, the remaining three Defendants (Centurion, Fabregas-

Schindler, and King) separately filed a motion to dismiss.  ECF No. 36.

Plaintiff was advised to respond to that motion as well, ECF No. 37, which

he has done.  ECF No. 39.  Both motions to dismiss are addressed in this Report and Recommendation.

Also pending is Plaintiff's motion requesting issuance of an injunction.  ECF No. 26.  Plaintiff sought to prohibit his transfer from Madison Work Camp to another correctional facility, unless it was to a "work release facility."  *Id.* at 1-2.  Plaintiff's motion suggested that any other transfer would "be a constitutional violation" done to punish him for commencing this action.  *Id.* at 2.

First, well established law provides that prisoners have no constitutional right to remain in, or be transferred to, a particular institution with particular rules, regulations and privileges.  Meachum v. Fano, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); Montayne v. Haymes, 427 U.S. 236, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976).  Both Meachum and Montanye held that intrastate prison transfers did not implicate the prisoners' due process rights.  Shortly thereafter, the Supreme Court held in Olim v. Wakinekona, 461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983), that transferring a prisoner from a Hawaii state prison to a California prison did not implicate a liberty interest protected by the Due

Process Clause.  Prisoners simply do not have the right to remain incarcerated within a particular geographic area.  <u>Meachum</u>, 427 U.S. at 224, 96 S. Ct. at 2538.  Thus, Plaintiff lacked a constitutionally protected right to remain at Madison Correctional Institution.

Additionally, Plaintiff did not provide facts which demonstrated that he had been, or was going to be subject to retaliation by any specific Defendant.  A conclusory assertion unsupported by facts is insufficient.  There is no indication that any Defendant was responsible for Plaintiff's housing assignment or would direct his transfer.

Moreover, on November 27, 2019, Plaintiff filed a notice of change of address which revealed Plaintiff had been moved to Bridges of Jacksonville.  ECF No. 40.  Judicial notice is taken that Bridges of America operate work release centers.  Because Plaintiff was not opposed to a transfer to such a facility, and because it has already occurred, Plaintiff's motion for an injunction, ECF No. 26, should be denied as moot.

**Plaintiff's Amended Complaint, ECF No. 8**

Plaintiff alleged that in September 2017, he had surgery for double inguinal hernias.  ECF No. 8 at 6.  Plaintiff was given restricted activity

passes and told to have them renewed in June 2018 when they were set to expire. Plaintiff requested renewal of his passes, but Defendant Fabregas-Schindler denied the request without examining Plaintiff. *Id.* at 6-7. A subsequent request for another pass renewal was requested in an informal grievance, but denied by Defendant King. *Id.* at 8.

Plaintiff was eventually given an appointment with Defendant Fabergas-Schindler in August 2018, but again, Plaintiff was advised that he would not be given the passes. *Id.* at 8-9. Defendant Fabregas-Schindler told Plaintiff her hands were "tied, it's a provider policy." *Id.* at 9. Again, she did not examine Plaintiff, but did at least renew his bottom bunk pass, which Plaintiff said was for an issue with an "abnormally fused foot bone" and not the hernia surgery. *Id.* at 9-10.

A follow up grievance addressed to Defendant Bearden[1] about all the medical problems Plaintiff was experiencing was denied. ECF No. 8 at 10. Plaintiff alleged that Defendant Bearden "agreed with the policies saying they are set up as guidelines." *Id.* Defendant Bearden also indicated that

---

[1] Plaintiff spelled this Defendant's surname as "Beardon" in the complaint, ECF No. 8 at 10, but the motion to dismiss spells Defendant's name as Bearden. ECF No. 24.

Plaintiff's problem appeared to be have been addressed because Plaintiff had been issued a bottom bunk pass. *Id.*

Plaintiff was examined by Defendant Fabregas-Schindler on August 29, 2018, at which time she diagnosed Plaintiff with "hernias on each side again." *Id.* at 10-11. Plaintiff said Defendant Fabregas-Schindler told him she was referring him for surgery, but Plaintiff alleged that he did not want to have another surgery while in the Department's care because there is insufficient "after care" and they do not abide by the surgeon's orders. *Id.* at 11. Plaintiff seeks monetary damages, punitive damages, and any other relief that is "necessary, deserved, or just." *Id.* at 12.

Plaintiff's complaint asserts Eighth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983, as well as state law claims for negligence, medical malpractice, and emotional distress. ECF No. 8 at 12.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the standard from

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  "To

survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

(quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[2]  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at

556); see also Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th

Cir. 2010).  "The plausibility standard" is not the same as a "probability

requirement," and "asks for more than a sheer possibility that a defendant

has acted unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S.

at 556).  A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in Twombly, 550 U.S. at 558). The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79, 129 S. Ct. at 1949. A complaint

does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678, 129 S. Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting Twombly, 550 U.S. at 555).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

One additional principle bears highlighting: a motion to dismiss does not test the truth of a complaint's factual allegations.  As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949, even when they are "doubtful in fact."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'"  Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69

(1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13cv228-RH/EMT, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

**Defendant Bearden's Motion to Dismiss, ECF No. 34**

Defendant Bearden raises Eleventh Amendment immunity as a defense to the claims brought against her in her official capacity as an Assistant Warden. ECF No. 34 at 3-4. Plaintiff's response on this point is inconsistent. Plaintiff says that Defendant Bearden "claims that Plaintiff sued [her] in her official capacity." ECF No. 38 at 6. Plaintiff then says that is "an untrue statement" and he refers to page 2(a) of the amended complaint for the premise that each Defendant is sued "in their own individual and official capacities." *Id.*

First, the amended complaint (as well as the initial complaint, ECF No. 1) is silent as to the capacities in which Plaintiff sues any Defendant. No statement was included in either of Plaintiff's complaints as to the capacity in which he intended to sue the Defendants. Second, if Plaintiff contends that he sues Defendant in both their official and individual

capacities, then Defendant Bearden's assertion of Eleventh Amendment immunity to the official capacity claim is not "untrue."[3]

Third, the law is well established that a claim for monetary damages from a state official sued in his or her official capacity must be dismissed. The "Eleventh Amendment bars a damages action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985); *see also* Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990). That immunity also bars claims against "State officials [who] are sued for damages in their official capacity." Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107; *see also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (same). "That is so because . . . 'a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents.'" 473 U.S. at 169, 105 S. Ct. at 3107.

---

[3] Individual capacity claims "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citing Scheuer v. Rhodes, 416 U.S. 232, 237–238, 94 S. Ct. 1683, 1686–1687, 40 L. Ed. 2d 90 (1974)). Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky, 473 U.S. at 165–66, 105 S. Ct. at 3105 (quoting Monell v. New York City Dept. of Soc. Servs, 436 U.S. 658, 690, n.55, 98 S.Ct. 2018, 2035, n.55, 56 L.Ed.2d 611 (1978)).

Notwithstanding, Eleventh Amendment immunity may be waived.

Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 119 S. Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999). Either a State may waive its immunity or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment. However, Congress did not do so when enacting § 1983, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor has Florida waived its immunity and consented to suit in federal court under § 1983. Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509, 1520 (11th Cir. 1986).

The only other exception is through Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908). Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court). The Ex parte Young exception holds that a state official who enforces state law which conflicts with the superior authority of the federal Constitution is "stripped of his official or representative character and is

subjected in his person to the consequences of his individual conduct."

Stewart, 563 U.S. at 254, 131 S. Ct. at 1638.  Determining whether this

exception applies requires answering a "straightforward inquiry into

whether [the] complaint alleges an ongoing violation of federal law and

seeks relief properly characterized as prospective."  563 U.S. at 255, 131

S. Ct. at 1639 (citations omitted).  In this case, Plaintiff has not requested

prospective injunctive relief and the factual allegations supporting his

complaint are based entirely on the events from 2017 and 2018.  Thus, the

motion to dismiss should be granted to the degree Plaintiff has brought

claims for monetary damages against Defendant Bearden in her official

capacity.

Furthermore, Defendant seeks dismissal of Plaintiff's state law claims

for negligence and negligent infliction of emotional distress.  ECF No. 34 at

3-4.  Defendant argues that Plaintiff's complaint did not include allegations

asserting that Defendant acted in bad faith or with a malicious purpose.  *Id.*

"Under Section 768.28(9)(a), an officer, employee, or agent of the

state may not be held personally liable for conduct in the scope of his or

her employment or function unless he or she 'acted in bad faith or with

malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" Harris v. Debellis, 658 F. App'x 940, 943 (11th Cir. 2016) (quoting Fla. Stat. § 768.28(9)(a)).  Defendant Bearden was acting as the Assistant Warden in responding to Plaintiff's grievances and, thus, was operating within the scope of her employment. Accordingly, for Plaintiff's state law claims to proceed against her, Plaintiff must have included allegations of action taken in "bad faith" or with a "malicious purpose" or in "wanton and willful disregard" of Plaintiff's safety. Harris, 658 F. App'x at 943.  Plaintiff's complaint includes no such facts. The motion to dismiss should be granted as to Plaintiff's state law tort claims.

Defendant Bearden also argues that Plaintiff's complaint fails to state a claim for deliberate indifference.  ECF No. 34 at 6-11.  The Eighth Amendment[4] governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v.

---

[4] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation."  Thomas v. Bryant, 614 F.3d 1288, 1303-04 (11th Cir. 2010).  This case involves one type of claim - deliberate indifference to medical needs - but does not involve the other two possible claims: a challenge to the conditions of confinement or the use of excessive force.

Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811

(1994).  "The Constitution 'does not mandate comfortable prisons,' Rhodes

v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59

(1981), but neither does it permit inhumane ones."  Farmer, 511 U.S. at

832, 114 S. Ct. at 1976.  The Eighth Amendment guarantees that prisoners

will not be "deprive[d] ... of the minimal civilized measure of life's

necessities."  Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399 (quoted in

Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic

human necessities include food, clothing, shelter, sanitation, medical care,

and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir.

1991) (cited in Collins v. Homestead Corr. Inst., 452 F.App'x 848, 850-851

(11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates

the Eighth Amendment's prohibition against cruel and unusual punishment.

Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A

serious medical need is 'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention."  Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in

Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of

these situations, the medical need must be 'one that, if left unattended,

'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1243

(citation omitted); *see also* Mann v. Taser Intern., Inc., 588 F.3d 1291,

1307 (11th Cir. 2009).  Alternatively, "a serious medical need is determined

by whether a delay in treating the need worsens the condition" or "if left

unattended, poses a substantial risk of serious harm."  Mann v. Taser

Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

Deliberate indifference requires more than negligence,[5] but it is

unnecessary to show a defendant intended to cause harm.  Farmer v.

Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811

(1994).  Deliberate indifference requires a plaintiff to show that a defendant

was subjectively reckless and consciously disregarded a substantial risk of

serious harm.  Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed.

2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at

---

[5] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  Bingham, 654 F.3d at 1176 (citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

1979-80).  "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'"  Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243).

To properly assert a claim for the denial of medical care, Plaintiff's complaint must include factual allegations which show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243.  Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'"  Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

 "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' "

McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)

(quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice

does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S.

Ct. at 292.  "Nor does a simple difference in medical opinion between the

prison's medical staff and the inmate as to the latter's diagnosis or course

of treatment support a claim of cruel and unusual punishment."  Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989)).  "A 'complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment.'"

Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at

1176).  For example, the prisoner in Estelle received treatment for his back

injury, but complained that more should have been done in the way of

diagnosis.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic
> techniques or forms of treatment--is indicated is a classic
> example of a matter for medical judgment.  A medical decision
> not to order an X-ray, or like measures, does not represent
> cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Put simply, an "official acts with

deliberate indifference when he or she knows that an inmate is in serious

need of medical care, but he fails or refuses to obtain medical treatment for

the inmate."  McElligott, 182 F.3d at 1255 (citations omitted).

The only basis for Plaintiff's claim against Defendant Bearden is that

she denied one grievance which Plaintiff submitted on August 8, 2018.

ECF No. 8 at 10.[6]  The fact that Defendant Bearden denied Plaintiff's

grievance is insufficient to show that she was deliberately indifferent to

Plaintiff's plight.  Plaintiff's allegations reveal that Defendant Bearden

responded to Plaintiff's grievance and did not ignore it.  The response

indicates Defendant Bearden investigated Plaintiff's complaint as she was

aware that Plaintiff had received at least one medical pass.  Defendant

Bearden is an assistant warden and not a medical provider; the Defendant

does not set policy for medical procedures.  Defendant Bearden appears to

have done all should could do in responding to Plaintiff's grievance.  She

was not deliberately indifferent to his needs in responding to Plaintiff's

_____

[6] Plaintiff's response to the motion to dismiss indicates that Defendant Bearden may
have answered three grievances, see ECF No. 38 at 8, but the complaint alleged
involvement by this Defendant in responding to only one grievance.  ECF No. 8 at 10.

grievance, even though it was denied. *See* <u>Brown v. Head</u>, 190 F. App'x 808, 810 (11th Cir. 2006) (noting the record revealed that "staff investigated Brown's grievance and responded accordingly"). The motion to dismiss should be granted as to Plaintiff's Eighth Amendment claim brought against Defendant Bearden.

Finally, Plaintiff also asserted a Fourteenth Amendment equal protection claim. Defendant Bearden points out that Plaintiff's amended complaint does not "set forth any facts in support of" an equal protection claim. ECF No. 34 at 12. In response, Plaintiff contends that his "8th Amendment violation shows no equal protection as guaranteed under the 14th Amendment plain and simple." ECF No. 38 at 7. That is not a correct statement of the law, however.

The Equal Protection Clause of the Fourteenth Amendment proclaims that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. To present a plausible "claim under the Equal Protection Clause, a prisoner can allege that '(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on

some constitutionally protected interest such as race.'" <u>Jones v. Ray</u>, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoted in <u>Smith v. Reg'l Dir. of Fla. Dep't of Corr.</u>, 368 F. App'x 9, 12 (11th Cir. 2010)).   In this case, Plaintiff has not alleged that he was treated differently than any other inmate. Moreover, Plaintiff has not alleged that he was treated differently due to race, religion, ethnicity, and the like.   Plaintiff's equal protection claim is conclusory, unsupported by facts, and should be dismissed.   Doing so leaves no other claim against Defendant Bearden.   Thus, Defendant Bearden should be dismissed from this action.

**The Second Motion to Dismiss, ECF No. 36**

Defendants Centurion Health of Florida ("Centurion"), Dr. Fabregas-Schindler, and King filed a separate motion to dismiss.   ECF No. 36. The first basis for dismissal is Defendants' contention that Plaintiff failed to exhaust administrative remedies.   *Id.* at 2-3.   They acknowledge that Plaintiff filed grievances, but contend "Plaintiff never appealed any of the grievances or responses to the Secretary of the FDOC, a required step of the exhaustion process."   *Id.* at 3.   Defendants also argue that many of Plaintiff's grievances "failed to name any or all of the Defendants."   *Id.*

When enacting the Prison Litigation Reform Act, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).   The exhaustion requirement of § 1997e(a) is mandatory.  Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007).[7]

---

[7] The Court in Jones found that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement."  Jones, 549 U.S. at 217-219, 127 S. Ct. at 922-923

Prisoners must comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Jones, 549 U.S. at 223, 127 S. Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal of only the unexhausted "claims," not an entire "action"); Brown v. Sikes, 212 F.3d 1205, 1206, n.1 (11th Cir. 2000).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not

---

(concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances").

Case No. 4:18cv472-WS-CAS

a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082 (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[8] The burden of proof for evaluating an exhaustion defense rests with the Defendants. Jones, 549 U.S. 199, 127 S. Ct. at 921 (concluding "that failure to exhaust is an affirmative

---

[8] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Turner</u>, 541 F.3d at 1082-83.

In response, Plaintiff states that he "made several attempts to exhaust properly and was purposefully hindered in his attempts by institutional staff holding grievance responses until last day of possible appeal time."  ECF No. 39 at 3.  Plaintiff indicates that he submitted appeals which were "returned because of non compliance with time frames."  *Id.*  Plaintiff also provided copies of his grievances and an appeal. ECF No. 39 at 9-21.

Defendants properly note that the Florida Administrative Code sets forth the grievance process applicable to Florida prisoners.  ECF No. 36 at 5.  The Rules require prisoners to: "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the [Florida Department of Corrections]."  *Id.*

This action was filed on October 18, 2018.  ECF No. 1.  Plaintiff must have properly exhausted administrative remedies prior to that date. Plaintiff's evidence reveals that he did so.

On July 29, 2018, Plaintiff submitted a formal grievance which complained about the denial of his request to have his medical pass renewed.  ECF No. 36-1 at 14 (Defendants' Ex. A).  He also complained that the request was denied without a visit or check of his "surgical sight." *Id.*  The informal grievance was denied on August 2, 2018.  *Id.*

On August 8, 2018, Plaintiff submitted a formal grievance.  *Id.* at 10. He complained that he had hernia surgery in September 2017 and was supposed to have been provided a medical pass for 18-24 months.  *Id.* Plaintiff said that his pass renewal was denied prematurely and he complained that he was improperly charged a medical co-pay.  *Id.* Furthermore, Plaintiff complained that Dr. Fabregas-Schindler advised him that pursuant to Centurion policy, passes should be terminated "6 months after surgery."  *Id.* at 11.  Plaintiff complained that he was improperly released to "full duty" because of Centurion's policy, and said his health and safety was now at risk because of a "blanket policy" that is made "with

no well-fare check-up on inmate patients." *Id.* at 11-12. That grievance was denied by Defendant Bearden on August 16, 2018. *Id.* at 9.

On August 20, 2018, Plaintiff submitted an appeal to the Secretary's Office. ECF No. 39 at 16-17. Plaintiff complained that Dr. Schindler told him she could not help him due to "provider policy" but he said he needed the passes which had been "pulled." Plaintiff alleged that he was injured again because he had been returned "to full unrestricted duty without even a well-fare check." *Id.* at 16. Plaintiff's appeal was denied on September 21, 2018. *Id.* at 15. Accordingly, Plaintiff has demonstrated that he exhausted administrative remedies. The motion to dismiss as to this argument should be denied.

Next, Defendants contend that Plaintiff's complaint "fails to state a claim for violation of his constitutional rights." ECF No. 36 at 7. Defendants assert that Plaintiff has not alleged facts which show that any Defendant was deliberately indifferent to his medical need. *Id.* at 8.

Plaintiff's amended complaint alleged that following his hernia surgery, he was advised to have his passes renewed for up to 24 months to allow proper healing. ECF No. 8. That amount of time was specified by

the surgeon and was not simply Plaintiff's disagreement with the opinion of

a doctor at his institution.  Plaintiff alleged that Dr. Fabregas-Schindler

denied his request for the pass renewal without even examining him.  The

doctor told Plaintiff at a later time that her hands were tied due to the

provider's policy.  Plaintiff was "sent away" without treatment and "was left

on full duty work."  Because he was required to work Plaintiff alleges he

was re-injured, and cannot now work or go to recreation or even stand in

chow line without pain.  *Id.* at 8, 10.  At this stage of the litigation, those

factual allegations are sufficient to support an Eighth Amendment claim as

to Defendant Fabregas-Schindler and Centurion.

An additional comment is warranted as to Centurion's argument

within the motion to dismiss.  Centurion contends that Plaintiff "failed to

assert a single fact tending to show that Centurion acted with deliberate

indifference to Plaintiff's serious medical needs, or even that Centurion

performed any act at all."  ECF No. 36 at 9.  Plaintiff's amended complaint

identified Centurion as the Department of Corrections' "medical provider."

ECF No. 8 at 2.  There are numerous references to the provider's policy

which prevented Plaintiff from having his passes renewed.  In adhering to

that policy, Plaintiff was injured.  Thus, Plaintiff sufficiently alleged that

Centurion had a policy which caused him harm.  Plaintiff's claim is not

based on a theory of respondeat superior but, rather, that Centurion's

policy caused Plaintiff harm.  The motion to dismiss should be denied as to

Plaintiff's Eighth Amendment claim against Centurion.

However, Plaintiff's complaint does not present a factual basis to

support his claim against Defendant L. King, the Health Services

Administrator at Madison Correctional Institution.  The only allegation

made which pertains to Defendant King is that Plaintiff wrote an informal

grievance on July 29, 2018, which Defendant King denied.  *Id.* at 7-8.

Plaintiff indicates that he "was told they set up an appointment with the

doctor and [Plaintiff could] address" his issues at that time.  *Id.* at 8.

Defendant King's response indicates that Plaintiff's medical needs were

not ignored as his informal grievance was investigated and he was

provided a response.  Because there are no other facts alleged pertaining

to Defendant King, the motion to dismiss should be granted as to that

Defendant.

Defendants argue that Plaintiff's medical malpractice claim should be dismissed because Plaintiff did not comply with the requirements of Florida Chapter 766.  ECF No. 36 at 10.  Defendants point out that Plaintiff's complaint does not establish that Plaintiff conducted a pre-suit investigation which is required by state law.  *Id.* at 10-11.

The relevant statute provides that a claimant must "conduct an investigation to ascertain that there are reasonable grounds to believe that: (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and (b) Such negligence resulted in injury to the claimant."  FLA. STAT. § 766.203(2).  "Corroboration of reasonable grounds to initiate medical negligence litigation" must be provided through the "submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(6)" which must "corroborate reasonable grounds to support the claim of medical negligence."  FLA. STAT. § 766.203(2).  "After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence."

FLA. STAT. § 766.106(2)(a).  No lawsuit "may be filed for a period of 90 days" after the presuit notice is mailed to any prospective defendant. FLA. STAT. § 766.106(3)(a).

In response to this argument, Plaintiff states that "pre-suit medical negligence claims as per chapter 766, Florida Statutes, has been started in Madison County Court House."  ECF No. 39 at 5.  That assertion is insufficient to demonstrates that Plaintiff complied with the statute.  Plaintiff has not identified a "verified written medical expert opinion" that was obtained in a pre-suit investigation, nor has Plaintiff shown that such an investigation was undertaken prior to the initiation of this case.  Accordingly, the medical malpractice claims should be dismissed.

Additionally, although Plaintiff asserted a claim for negligence as well as medical malpractice, *see* ECF No. 8 at 12, the only basis for his claim is that Defendants failed to provide appropriate medical case.  Plaintiff did not allege a negligence claim separate and apart from the medical malpractice claim.[9]  Thus, Plaintiff's negligence claim is subsumed into the medical malpractice claim and should be dismissed from this action.

---

[9] By definition, "[m]edical negligence' means medical malpractice, whether grounded in tort or in contract."  FLA. STAT. § 766.202(7).

Finally, Defendants seek dismissal of Plaintiff's claim for the intentional infliction of emotional distress on the basis that Plaintiff's allegations are insufficient.  ECF No. 36 at 11.  "In order to state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must plausibly allege: '(1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct that (3) caused the emotional distress, and (4) that the distress was severe.'"  Tillman v. Orange Cnty., 519 F.App'x 632, 636 (11th Cir. 2013) (quoted in Short v. Immokalee Water & Sewer Dist., 165 F. Supp. 3d 1129, 1152 (M.D. Fla. 2016)).  "For conduct to be sufficiently outrageous, it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Lopez v. Target Corp., 676 F.3d 1230, 1236 (11th Cir. 2012) (quoted in Short, 165 F. Supp. 3d at 1152 (other quotation omitted).  Determining if alleged conduct "satisfies this high standard is a legal question 'for the court to decide as a matter of law.'"  Short, 165 F. Supp. 3d at 1152 (quoting Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575, n.7 (11th Cir. 1993) (other citations omitted).  Here, Plaintiff has alleged a claim for deliberate indifference to his medical needs, but there

are no allegations of outrageous or extreme conduct.  Accordingly, the

motion to dismiss should be granted as to that claim as well.

## Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that: (1)

Plaintiff's motion for an injunction, ECF No. 26, be **DENIED** as moot; (2)

that Defendant Bearden's motion to dismiss, ECF No. 34, be **GRANTED**;

(3) and the second motion to dismiss, ECF No. 36, be **GRANTED in part**

as to Plaintiff's claims brought against Defendant King, the state law claims

brought against Defendants Centurion and Dr. Fabregas-Schindler, and

the equal protection claim, but the motion, ECF No. 36, should otherwise

be **DENIED** as to Plaintiff's Eighth Amendment claim and Defendants

Centurion and Fabregas-Schindler should be required to file an answer to

Plaintiff's amended complaint.  It is further **RECOMMENDED** that this case

be **REMANDED** to the undersigned for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 6, 2020.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  _Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control._  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  _See_ 11th Cir. Rule 3-1; 28 U.S.C. § 636.**