IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JASON P. REED,

      Plaintiff,

v.                                                                          4:18cv472-WS/EMT

CENTURION OF FLORIDA, LLC,
and J. FABREGAS-SCHINDLER,

      Defendants.

_____

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Before the court is the magistrate judge's report and recommendation (ECF No. 65) docketed February 8, 2021. The magistrate judge recommends that Defendants' motion for summary judgment (1) be granted as to Plaintiff's Eighth Amendment claim regarding Defendants' failure to renew Plaintiff's low bunk pass; but (2) be denied as to Plaintiff's Eighth Amendment claim regarding Defendants' failure to renew Plaintiff's restricted activity pass. Defendants have filed objections (ECF No. 66) to those portions of the magistrate judge's report and recommendation dealing with the Plaintiff's restricted activity pass. Plaintiff has

filed no objections to the magistrate judge's report and recommendation and has not responded to Defendants' objections. Based on the record before it, the undersigned has determined that Defendant's motion for summary judgment should be granted *in toto*.

I.

The magistrate judge summarized the record undisputed material facts as follows:

> In late September 2017, while in FDOC custody, Plaintiff underwent surgery for double inguinal hernias (ECF No. 55-1 at 4–5). Dr. Osvaldo Contarini performed the surgery at the Reception and Medical Center (RMC) in Lake Butler, Florida (*id.* at 4). Once released from Dr. Contarini's care, Plaintiff was sent to the infirmary, where the provider prescribed Colace and a scrotal support for two weeks, along with Lortab, and indicated Plaintiff could engage in activity "as tolerated" (*id.* at 28). The provider's notes indicate there was to be a consult for scheduling passes for a low bunk; no prolonged standing, pushing, pulling, or lifting; and "lay in" for five days (*id.* at 29).
>
> Plaintiff returned to Dr. Contarini for a post-operative appointment on October 17, 2017 (ECF No. 55-1 at 34). Dr. Contarini noted Plaintiff appeared "well healed" (*id.*). Seven months later, on May 24, 2018, Plaintiff submitted a sick-call request to the medical department at Madison to renew the low bunk and restricted activity passes (*id.* at 25). The medical department received the request on May 29, and Plaintiff saw a nurse on June 1 (*id.* at 24–25). The nurse noted Plaintiff was requesting renewal of his low bunk and restricted activity passes, which were set to expire on June 13, and forwarded Plaintiff's chart to a doctor for review (*id.* at 24). A notation in Plaintiff's chart, dated June 7, 2018, states "Can't have pass —hernias repaired > 6 mo. ago" (*id.*). The accompanying signature is illegible

(*id.*). Although it is not clear, for purposes of this Report and Recommendation, the undersigned assumes the signature is that of Defendant Dr. Fabregas-Schindler.

The doctor's decision apparently was not communicated to Plaintiff because Plaintiff submitted another request and saw a nurse on July 6 (*id.* at 23). The nurse informed Plaintiff that "MD" denied his request for passes on June 7 (*id*). Plaintiff "vocalized understanding" and expressed no concerns (*id.*). The next day, Plaintiff submitted an inmate request explaining his need for the low bunk pass and noting it was based not only on the prior surgery but also on the fact that he had bilateral carpal tunnel syndrome and an abnormally fused foot bone (*id.* at 15). Three days later, on July 10, Plaintiff submitted a request complaining about being assessed a $5 co-pay without renewal of his passes (*id.* at 14). Medical staff advised Plaintiff that his medical records indicated he initiated a sick call visit and saw a nurse on June 1, that the nurse referred his chart to the doctor, and that the doctor denied the request because it had been more than six months since his hernia repair (*id.*). Medical staff also advised Plaintiff that assessment of the co-pay was appropriate (*id.*).

Plaintiff complained again about the co-pay in an inmate request submitted on July 29 (*id.* at 13). Plaintiff also complained that his requests were being ignored "without a visit and well-fare [sic] check of surgical sight [sic]" (*id.*). He said he needed the passes because of "an abnormally fused bone restricting jumping up and down from top bunk; and bi-lateral [sic] carpal tunnel restricting climbing and grip abilities" (*id.*). Plaintiff submitted yet another request on July 31, essentially repeating the matters set forth in the prior requests but adding that since being on full-duty work, he had been experiencing pain and numbness and had to spend a weekend in bed after being required to lift fifty-pound bags of groceries and boxes of food (*id.* at 16–18). Plaintiff stated his passes had recently expired and he was "still sore and the left surgical sight [sic] just closed up and still ha[d] some scab on it" (*id.* at 17). He again mentioned that the bottom bunk pass was for an abnormally fused bone, "which restricts dropping from any distances," and bilateral carpal tunnel syndrome, "which restricts [his] grip and climbing abilities" (*id.*). In response to the July

29 and July 31 requests, Plaintiff was advised that he had an upcoming appointment with the doctor and could address the issues then (*id.* at 13, 16).

Plaintiff saw Defendant Dr. Fabregas-Schindler on August 8, 2018 (*id.* at 22). Dr. Fabregas-Schindler noted Plaintiff claimed he was told he could not do any work for eighteen months after his surgery (*id.*). Dr. Fabregas-Schindler observed Plaintiff's left foot deformity and bilateral carpal tunnel syndrome and "cleared" Plaintiff for a low bunk pass for one year (*id.*). Three days later, on August 11, Plaintiff submitted a sick-call request stating he was "having severe pains in [the] surgical sight [sic], getting worse every week," and that it felt like his "groind [sic] muscles [were] detaching from [his] pelvic muscles" (*id.* at 21). He said it hurt to "even stand in [the] chow line" and that he had "sharp pain when [he] [sat] up out of bed and a little swelling also" (*id.*). Plaintiff said he recently "went back to full blown unrestricted duties, and in last 2½ weeks pain and discomfort ha[d] increased exponentially" (*id.*).

Plaintiff saw a nurse on August 17 and said the surgical site had been "hurting for a couple of weeks" (*id.* at 20). He complained of bilateral pain under the incision site, with the left side being the most painful (*id.*). The nurse examined Plaintiff's surgical site and noted no apparent distress, intact skin, and minor swelling in the left inguinal area (*id.*). The nurse forwarded Plaintiff's chart to a doctor to rule out "any adhesions/failed surgery" (*id.*).

Plaintiff says he received a "lay-in pass" on August 28 (ECF No. 8 at 9). He says he put in a sick call and saw a male nurse to whom he "explained everything going on and pains and everything" (*id.*). Plaintiff alleges the nurse examined him and "saw the bruising, the swelling, and the scabs" (*id.* at 9–10); no such observations, however, appear in Plaintiff's chart (*see* ECF No. 55-1 at 20). Plaintiff alleges the nurse referred him for an MRI and to see the doctor (*see* ECF No. 8 at 10). Plaintiff's chart indicates only that the nurse advised Plaintiff that his chart was pending review with the medical provider and that Plaintiff "verbalized understanding" (ECF No. 55-1 at 20).

Dr. Fabregas-Schindler saw Plaintiff on August 29. Plaintiff advised that he "was lifting something & felt something rip" (*id.*). Dr. Fabregas-Schindler examined Plaintiff and observed a palpable inguinal hernia on the left side (*id.*). Dr. Fabregas-Schindler assessed recurrent inguinal hernia on the left side and referred Plaintiff for surgery (*id.*). In the surgical consultation request, Dr. Fabregas-Schindler noted Plaintiff had been doing well since the hernia repair "until recently, when he lifted something heavy . . . [and] felt a rip and now has excruciating pain" (*id.* at 35). Dr. Fabregas-Schindler indicated Plaintiff had a "defect" in the left groin and that the "region [was] very painful on palpation" (*id.*). She rendered a provisional diagnosis of recurrent left inguinal hernia and requested an "urgent" surgical evaluation and treatment recommendation (*id.*).

Later that day, Plaintiff submitted an inmate request stating he refused medical services from RMC and any other FDOC facility "in order to pursue on [his] own capacity upon release" (*id.* at 12). The following day, on August 30, Plaintiff submitted another inmate request reiterating his refusal to "pursue surgery through F.D.O.C. channels" and stating he would "pursue surgery on [his] own capacity upon release" (*id.* at 11). Plaintiff submitted a third such request on September 6, in which he alleged a failure to follow Dr. Contarini's orders regarding post-operative care and claimed he was injured as a direct result thereof (*id.* at 10).

Despite his objections, Plaintiff was transported to RMC for a general surgery consultation on September 11 (*id.* at 19). The surgeon noted no complaints or distress and found no distinct hernia; he nevertheless recommended a CT scan of Plaintiff's pelvis and a follow-up appointment (*id.*). Plaintiff returned to Madison the same day, with no complaints (*id.*). On September 17, 2018, a member of the medical staff at Madison completed a request for a CT scan (*id.*; ECF No. 58 at 20). By that time, Dr. Fabregas-Schindler no longer worked for Centurion (*see* ECF No. 55-2 at 6).

Plaintiff commenced this civil rights action shortly thereafter, on October 18, 2018 (ECF No. 1). A CT scan conducted several months later, on January 10, 2019, revealed "small bilateral inguinal hernias

right side greater than left" (ECF No. 58 at 19).

ECF No. 65 at 5–11.

## II.

The magistrate judge recommended that Defendants' motion for summary judgment as to Plaintiff's claim regarding his restricted activity pass be denied "based on Centurion's alleged [six-month] policy regarding restricted activity passes and Dr. Fabregas-Schindler's failure to renew Plaintiff's restricted activity pass upon its expiration." ECF No. 65 at 20. Unlike the magistrate judge, the undersigned finds that the undisputed facts do not raise an inference that either Centurion or Dr. Fabregas-Schindler acted with deliberate indifference to Plaintiff's serious medical needs.

The surgeon who performed Plaintiff's double inguinal hernia operation on September 27, 2017, noted in the medical record (ECF No. 55–1 at 28-9) that Plaintiff should do no prolonged standing, pushing, pulling or lifting following the surgery. The surgeon did not indicate how long such a restriction should remain in place. *See also id.* at 4, 9. In late May of 2018, when Plaintiff submitted his written request for pass renewals and was soon after seen by a nurse pursuant to that request, neither Plaintiff—on his request form (*id.* at 25)—nor the nurse—on Plaintiff's medical chart (*id.* at 24)—indicated that Plaintiff was experiencing any

post-surgery problems or otherwise explained why Plaintiff's restricted activity pass should be renewed. The nurse forwarded Plaintiff's renewal-request form and medical chart to Dr. Fabregas-Schindler, the Site Medical Director, for review. On June 7, 2019, more than eight months after Plaintiff's surgery and more than seven months after the surgeon, Dr. Contarini, noted on October 17, 2017, that Plaintiff appeared "well healed," Dr. Fabregas-Schindler denied Plaintiff's request for pass renewals without seeing or examining him, noting—on Plaintiff's medical chart (*id.*)—that it had been more than six months since his surgery. Even assuming that Dr. Fabregas-Schindler relied on a "blanket" six-month policy regarding restricted activity passes, such reliance would not support a finding of deliberate indifference given the information then available to Dr. Fabregas-Schindler.

On August 8, two months after her initial denial of Plaintiff's pass-renewal requests, Dr. Fabregas-Schindler saw Plaintiff in response to Plaintiff's informal grievances (*id.* at 13, 16–18) dated July 29 and 31, 2018. In those grievances, Plaintiff asserted that the doctor's reliance on a "blanket" six-month policy was "without merit," given that he was experiencing soreness and numbness at his surgical site and that he suffered from both an abnormally fused foot bone and carpal tunnel syndrome, compromising his ability to get into and out of an upper

bunk. Plaintiff also asserted that Dr. Contarini told him that eighteen (18) to twenty-four (24) months were needed for full recovery from his hernia operation. After seeing Plaintiff, Dr. Fabregas-Schindler renewed Plaintiff's low bunk pass but again declined to renew his restrict activity pass. Plaintiff immediately filed a formal grievance (ECF No. 58 at 25-7), again suggesting that the doctor denied renewal of his restricted activity pass based on a "blanket" policy mandating cancellation of passes six (6) months after surgery. Plaintiff's formal grievance was denied by response dated August 16, explaining: "A record review indicates that you were evaluated by the Doctor again and your low bunk pass was reinstated. *These policies are set up as a guideline but as indicated by the reinstatement of your [low-bunk] pass, the Site Medical Director has the final authority.*" *Id.* at 28 (emphasis added). Plaintiff thereafter appealed the denial of his formal grievance to the Secretary of the Department of Corrections. That appeal was denied with the following explanation: "It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including medical passes. . . . [I]nmates do not have the right to dictate how medical passes are written." *Id.* at 31.

   On August 11, 2018, Plaintiff submitted an inmate sick-call request, explaining that, with his recent return to "full-blown unrestricted duties," his "pain

and discomfort ha[d] increased exponentially." ECF No. 55–1 at 21. He was seen by a nurse on August 17, who noted no apparent distress, intact skin, and minor swelling in the left inguinal area. *Id.* at 20. The nurse forwarded Plaintiff's chart to Dr. Fabregas-Schindler, who saw Plaintiff on August 29. Plaintiff advised the doctor that he "was doing well until recently, when he lifted something heavy. He felt a rip and now has excruciating pain." *Id.* at 35. After finding that Plaintiff's left groin region was "very painful on palpitation," Dr. Fabregas-Schindler referred Plaintiff to a surgeon for further evaluation. *Id.* at 35. Although Plaintiff soon after submitted multiple inmate requests (*id.* at 10–12), stating that he refused to pursue additional surgery while in the care of Florida Department of Corrections, Plaintiff was transported for a general surgery consultation on September 11. The surgeon, Dr. Gupta, found no palpable mass, swelling, or distinct hernia, but recommended a CT scan of Plaintiff's pelvis and a follow-up exam. *Id.* at 19, 36. By the time Plaintiff was seen by Dr. Gupta, Dr. Fabregas-Schindler no longer worked for Centurion. ECF 55–2 at 6.

Unlike the magistrate judge, the undersigned concludes that the record evidence does *not* show that either Dr. Fabregas-Schindler or Centurion are liable under the Eighth Amendment for deliberate indifference to Plaintiff's serious medical needs. Dr. Fabregas-Schindler understood that, to the extent there was a

"policy" with regard to post-surgery restricted activity passes, the policy served as a guideline only and did not preclude her from clearing inmates for passes based on her informed medical judgment. When Dr. Fabregas-Schindler initially denied Plaintiff's request for pass renewals, approximately two months before he was, in fact, returned to "full-blown unrestricted duties" and without seeing Plaintiff in person, Plaintiff had described no problems or complaints either on his inmate request form or to the nurse who saw him during sick call. Later, when Plaintiff voiced specific concerns, such as pain, numbness, and bruising, Dr. Fabregas-Schindler saw Plaintiff in person and acted according to her medical judgment, first renewing Plaintiff's low bunk pass, later referring Plaintiff to a surgeon for further evaluation. Dr. Fabregas-Schindler's actions did not result in a violation of Plaintiff's Eighth Amendment rights. As to Centurion, assuming the six-months "policy" can be attributed to Centurion, there is no evidence that the policy resulted in or contributed to a violation of Plaintiff's constitutional rights, much less that it led to a persistent and widespread practice of violating inmates' Eighth Amendment rights.

Plaintiff having failed to establish a genuine issue of material fact regarding all issues in this case, it is ORDERED:

    1. The magistrate's report and recommendation (ECF No. 65) is ADOPTED

to the extent it addresses Plaintiff's Eighth Amendment claims regarding his low bunk pass.

2. The magistrate judge's report and recommendation (ECF No. 65) is REJECTED to the extent it addresses Plaintiff's Eighth Amendment claims regarding his restricted activity pass.

3. Defendants' motion for summary judgment (ECF No. 55) is GRANTED.

4. The clerk shall enter judgment, stating: "All claims are dismissed with prejudice."

DONE AND ORDERED this ___19th___ day of ___March___, 2021.


s/ William Stafford
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE